# Exhibit 1

Release & Treatment Plan

(redacted)

# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# FOR THE NORTHERN DISTRICT OF NEW YORK



<u>Syracuse Office</u>

4 Clinton Square
3ʳᴰ FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

**Lisa Peebles**
**Federal Public Defender**

<u>Albany Office</u>

54 State Street
STE 310
ALBANY, NY 12207
(518) 436-1850
FAX (518) 436-1780

**Paul Evangelista**
**First Assistant**

October 18, 2024

Attorney Matthew Trainor
Assistant Federal Public Defeder
54 State Street
Albany, NY 12207

  **Re:** <u>United States v. Kris Roglieri</u>
    Case No. 24-cr-00161-CFH

Dear Attorney Trainor:

  Please accept this memo to aid in your advocacy for an alternative to pretrial detention for Mr. Kris Roglieri. I am the mitigation specialist assigned to this case. I'm an independently licensed clinical social worker and I have a doctorate in social work. To prepare this memo, I met with Mr. Roglieri and spoke at length with his partner, Ms. Linda Oliver; his brother, Dr. Joe Roglieri; and his ex-wife, Tina Roglieri. I also reviewed Dr. Dodge's evaluation, received a verbal report about his behavior in detention from the jail, and read through several news reports and documents related to the instant case and to Mr. Roglieri's work in the community.

  Mr. Roglieri has been detained since May of this year, totaling 140 days at the time of this memo. In the time that he has been detained, Mr. Roglieri's grandmother passed away at the age of 106. His mother, suffering from cerebral amyloid angiopathy, is quickly succumbing to dementia. According to his ex-wife, his two children, G▬ (age 14) and S▬ (age 12) have exhibited elevated anxiety and sadness due to their separation from their father. The collateral consequences of Mr. Roglieri's lengthy period of detention are significant; he will not get back time with his mother while she is still lucid enough to know him and his children are in an important developmental period in their lives.

Mr. Roglieri's impeccable record in detention (zero disciplinary actions) has demonstrated to the Court that he is capable of both respecting law enforcement and supervision and avoiding dangerous individuals and situations. To Mr. Roglieri, the period of detention has "humbled" him. Dr. Joe Roglieri, in an interview for this memo, described how he has watched his brother move from totally distressed about losing his home, possessions, and lifestyle to "accepting that those things are just material, and they don't matter."

Given Dr. Dodge's assessment of minimal risk of violence and that he has a strong support network and that, if released, he will play an important role in caring for his ailing mother and his two children, Mr. Roglieri's release from detention can be both safely and adequately managed and will give him the opportunity to be a needed support to his family. The following plan outlines where he will be living, who will support him, the activities he will engage in, and the care he will receive to support his adjustment to his new environment and the pressures of pending federal charges. Although Mr. Roglieri's risk of dangerousness or failure to appear are already minimal, the below plan further mitigates concerns. I have attached to (and embedded in) this memo pictures that the family has shared with me, both of his proposed living environment and of his family.

**Proposed Residence**

Ms. Linda Oliver, consulted for this memo, confirmed that if released Mr. Roglieri will live with her in her rented home ███████████████ in Poughkeepsie, New York. Ms. Oliver works in Manhattan several days a week and, reportedly, settled in Poughkeepsie to be equidistant from Mr. Roglieri's children and her work. The home is a single-family home in a quiet neighborhood of the small city. Ms. Oliver proudly reported that she has worked to make the home comfortable (i.e. laying down hardwood floors) and welcoming for Mr. Roglieri's two children. She set up an office for Mr. Roglieri and created an outdoor living area to give him space should there be restrictions on his movement. Ms. Oliver owns a car and confirmed that Mr. Roglieri can have access to it as needed to comply with any conditions of release.

Specific to the concerns of the Court, Ms. Oliver confirmed that there are no firearms in her home, and she welcomes Probation's inspection and visits. She is proud of the home she has established for the couple.

**Proposed Activities**

Although Mr. Roglieri reported that he expects to spend much of his time studying and reviewing documents related to his defense, he also has community and familial obligations he will attend to if he is released. Mr. Roglieri is the youngest child of his family.

His mother named him "Kris" as a nod to Kris Kringle and his Christmas birthday. Dr. Joe Roglieri reported that mother and son have always been close. Ms. Brigita Roglieri moved into the TenBroeck nursing home in Lake Katrine, NY, in January of this year. Diagnosed with a rare brain condition, cerebral amyloid angiopathy (CAA), the family matriarch lost her ability to live independently as the disease progressed. The end stags of CAA involve recurrent brain hemorrhages, severe cognitive decline, and other neurological impairments. The nursing home is 26 miles from Ms. Oliver's home in Poughkeepsie. If released, Mr. Roglieri will regularly spend time with his mother as she endures the final stages of her disease. Dr. Roglieri expressed, "my biggest fear is that she will suffer a catastrophic stroke and never see my brother again."

In addition to caring for his mother and aiding in his defense, Mr. Roglieri will attend church with Ms. Oliver at Christ Episcopal Church in Poughkeepsie, NY. Ms. Oliver reported that she spoke to her pastor about Mr. Roglieri and his situation and that the pastor invited him to do volunteer work at the church and with the congregation. Ms. Oliver hopes that her partner will use his advanced piano skills to enrich services. Mr. Roglieri has a strong track record of giving back to the community. For several years he distributed Thanksgiving dinners to families in need; in 2023, for example, he donated and distributed 1,500 frozen turkeys and sides to families in the Arbor Hill neighborhood of Albany (see attached [CBS news](#) coverage screenshot). Mr. Roglieri also hosted an annual fundraiser at his home for the Melodies Center for Childhood Cancer and Blood Disorders; raising over $39,000 in 2020 (see inset picture). Volunteering in the community is a core to Mr. Roglieri's values and he looks forward to engaging in community betterment work if he is released.



Finally, as noted above, Mr. Roglieri has two children, ages 12 and 14. His ex-wife, interviewed for this memo, reported that "Kris has always been a good father." Although the parents separated over five years ago, Mr. Roglieri split custody of the children with his ex-wife and was very active in their school and sport activities. Until the destruction of his business, he financially supported his ex-wife and his children completely. Ms. Tina Roglieri only started working recently. Ms. Roglieri reported that the children have suffered in their father's absence. His 14-year-old daughter is anxious about his safety and when she will see him again. His 12-year-old son has grown sullen. The father and children

exchange letters regularly, but the confusion over Mr. Roglieri's arrest, their drastic lifestyle change, and their lengthy separation remains an unspoken tension. Mr. Roglieri does not want to expose his children to the jail environment and therefore has not visited with them in person in the months he's been detained. If released, Mr. Roglieri is committed to working to repair the damage done to their relationship and re-engaging in regular parenting and caretaking of his children.

**Proposed Treatment**

At the time of his detention on the instant case Mr. Roglieri's world was crumbling. His once successful business was in ruins, his hard-earned image as a community philanthropist was besmirched by serious allegations of wrongdoing, and he was unable to continue to support his children in the way he had always prided himself in doing. Acute depressive thoughts flooded his brain. In the months since his detention, the pressure dissipated, and Mr. Roglieri reports to feel calmer and more accepting of his situation.

Mental health treatment, specifically psychotherapy to address stressors of significant life transitions, management of destructive thoughts, and relationship support, is appropriate for Mr. Roglieri. While detained, Mr. Roglieri applied for Medicaid. In preparation for Mr. Roglieri's possible release, I reached out to psychotherapists local to the Poughkeepsie area and have identified two who are accepting new patients, accept Medicaid, and specialize in areas relevant to Mr. Roglieri's needs. If released, Mr. Roglieri will engage in weekly psychotherapy.  Dr. Joe Roglieri agreed to cover any costs associated with his brother's mental health treatment until his insurance coverage commences.

**Proposed Supports & Third-Party Custodian**

Everybody interviewed for this report, including Mr. Roglieri's ex-wife, Tina Roglieri, expressed support for his release from detention.  Dr. Roglieri is a practicing nephrologist in the Troy area and agreed to support his brother both emotionally and materially as he works to get back on his feet. Mr. Roglieri's partner, Ms. Linda Oliver has remained committed to Mr. Roglieri through the investigation, arrest, and detention. She has been active in preparing this report and is quick to respond to messages and inquiries. Ms. Oliver is a working fit model for the fashion industry. She commutes to Manhattan several days per week and independently supports herself- and now, Mr. Roglieri as well.

If needed, Ms. Oliver is willing to assume the responsibilities of a third-party custodian for Mr. Roglieri.  She agreed to work with probation and the court to ensure that Mr. Roglieri is compliant with any conditions of release. She affirmed her understanding that the role of third part custodian will require her to assume responsibility for monitoring Mr. Roglieri in the community and reporting any infractions. In response to my inquiry

about her willingness to perform these duties she responded affirmatively and added, "everything will be super organized, that's the way I am."

**Summary**

Dr. Dodge's assessment that Mr. Roglieri poses "minimal" risk of violence is supported by non-existent history of any anti-social behaviors or violence. His brother reported, "I don't think Kris ever even got in a fight in high school." Two ex-girlfriends submitted character letters in support of Mr. Roglieri and his ex-wife, Tina Roglieri, agreed to be interviewed for this memo. None report aggression or violence.

Prior to building up his financial company, Mr. Roglieri worked in a non-profit supporting people with developmental disabilities. He has lived experience in poverty as a child and has demonstrated resilience and determination throughout his life. All describe him as family-oriented and caring towards his loved ones. Given Mr. Roglieri's mother's serious and progressive illness, the community supports available to him, his two children's need for their father, his history of good character, the objective assessment of minimal risk to the community and minimal flight risk, it is appropriate to release Mr. Roglieri to the home of his partner, Ms. Linda Oliver with community supervision.

Please contact me with further requests for service coordination or monitoring as appropriate.

Respectfully,

*E. Walker*

Elizabeth Walker, DSW, LICSW
Mitigation Specialist

Family photos shared for this memo


Mr. Roglieri and his children


Mr. Roglieri's mother, Brigita Roglieri


Christ Episcopal Church, Poughkeepsie

Ms. Linda Oliver with Mr. Roglieri and children


Ms. Oliver's home at ▮ Poughkeepsie


The Big Giveback 2022

https://cbs6albany.com/news/local/for-fourth-year-big-give-back-provides-thanksgiving-meals-to-area-families

