# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# FOR THE NORTHERN DISTRICT OF NEW YORK



Syracuse Office

4 Clinton Square
3RD FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

Lisa Peebles
Federal Public Defender

Albany Office

54 State Street
STE 310
ALBANY, NY 12207
(518) 436-1850
FAX (518) 436-1780

Paul Evangelista
First Assistant

November 6, 2024

Hon. Christian F. Hummel, U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

    re:    United States v. Kris Roglieri
            Case No. 1:24-cr-392 (MAD)

Dear Judge Hummel:

    I write in reply to the government's response in opposition to Mr. Roglieri's most recent request to reopen his detention hearing. *See* Letter from USA as to Kris Roglieri requesting limited sealing of government's letter in opposition, Dkt#51, hereinafter "Govt #51"

    My first request was admittedly a bit ham fisted and ultimately insufficient to reopen the detention hearing under 18 U.S.C. § 3142(f)(2), however we have now provided information that was neither available nor known at the time of the original hearing. The new information consists of the risk evaluation report and the release and treatment plan submitted to the Court on October 25, 2024. *See* Medical Records filed as to Kris Roglieri, Dkt #47 hereinafter, "Risk Evaluation Report," *and* Letter from Matthew E. Trainor as to Kris Roglieri requesting reopening of detention hearing, Exhibit1, Dkt #48-1, hereinafter "Release and treatment plan."

The government's allegation that the proffered reports do not change the Court's prior finding is up to the Court. The Court's primary concern at the original detention hearing was the risk of potential violence that "raise[d] grave concern for the Court as to the safety of the FBI agents, the Court personnel, and judges." *See* Transcript of Detention Hearing 6/3/24, Dkt#21 at pg. 18. The Court's ordered detention because it felt that was the only way to prevent actual physical violence by Mr. Roglieri. "If I put him on electronic monitoring and GPS and he's determined to follow [through] on those alleged threats, I have no ability to stop him from doing so, and neither would pretrial services." Transcript of Detention Hearing at pg. 19.

The government claims that because AFPD Jeremy Sporn requested the opportunity to provide such documents like the Risk Evaluation Report and the Release and treatment plan to the Court in reconsideration of its ruling to detain Mr. Roglieri, that those materials are therefore *per se* insufficient to reopen the detention hearing. This theory was directly contradicted by the Court at the close of the original detention hearing on June 3, 2024 where the Court indicated that it would "determine whether or not it was sufficient basis for a further hearing. So I'm not saying I will or will not do it until I see the plan and see what it involves." Transcript of Detention Hearing at pg. 20.

If the mere acknowledgement of the possibility of obtaining a "risk or threat assessment" and/or a "counseling plan" establishing the defense's knowledge thereof was sufficient to preclude it from being a basis to reopen a detention hearing, the Court would not have offered to even review such a submission. The government's proposed standard is therefore much narrower than what is required by §3142(f).

The government and the Court both mention the Court's ruling that the defense "fails to address in any way the allegation that defendant threatened to harm the attorneys, receiver, and

judge in his bankruptcy proceeding and the allegation that he knew where three FBI agents lived and threatened to shoot at least one of them in the head." Decision and Order of Detention, Dkt#32 at pg. 3 *and* Govt #51 at pg. 1.  As to the text messages referenced they can be explained by simple logic.  The alleged threats to harm the attorneys, receiver, and judge in [the] bankruptcy proceeding, are at best only inferred from the text messages. *See* Letter from USA as to Kris Roglieri, Dkt#6, hereinafter Govt #6.

The three text messages in Exhibit 2 of Govt #6 were sent on 1/21/24 within a single minute.  The statements do not specify any particular target and are consistent with self-defense.  The text messages in Exhibit 3 of Govt #6 do specify identifiable persons as targets of Mr. Roglieri's anger and vengeance, but anger and vengeance do not necessarily require physical violence.  One could seek vengeance through civil litigation, professional discipline upon complaint, or exposure of a less than perfect reputation or by a myriad of other ways.  The texts in Exhibit 3 were sent on 1/25/24, more than four days after the texts in Exhibit 2 and therefore cannot be considered together as a single continuous train of thought.  There is no logical way to connect the attorneys, judge and receiver in Exhibit 3 with the specific threat in Exhibit 2.

As to the allegations by Person-1 about verbal statements by phone in January, *see* Govt #6 at pg. 3, and those in person on or about May 24, 2024, *see id.* at pg. 4, there are at least four reasons why this wasn't addressed in my original attempt to reopen the detention hearing.  First is because Mr. Sporn proffered at the initial detention hearing that Mr. Roglieri categorically denied the allegations made by Person-1.  "He Doesn't know where these people live." Transcript of Detention Hearing, *supra* at pg. 12.  And, "We deny that Mr. Roglieri said that, Your Honor. Didn't happen." *Id.* at pg. 13. Second is that the government's original filing only alleged that Mr. Roglieri knew where *one* of the agents lived, so the allegation that he knew the addresses of all three agents is self-

refuting. *See* Govt #6, at pg 4.  Also, Person-1 merely "described" the threats rather than any attempt to relate them verbatim, which was at a "subsequent" interview held an unknown period of time after May 24, potentially over a week later, so there is as good possibility of some embellishment by Person-1. *Id.*

Finally, the government's response to the most recent request to reopen the detention hearing, includes as Exhibit 2 a declaration under penalty of perjury by Mr. Roglieri's estranged wife. In contrast, the government apparently has not been able to (or has not even attempted to) obtain a similar sworn statement from Person-1 reiterating the allegations about an alleged phone call in January nor in person statements on or about May 24, 2024 under penalty of perjury. *See* Govt #51, Exhibit 2.  Considering the defendant's outright denial of the alleged verbal statements at the original detention hearing, the government would have logically sought to obtain such a declaration, the lack thereof speaks volumes.[1]

Regarding Mrs. Roglieri's affidavit, she stated that she reviewed Ms. Walker's Release and treatment plan.  In that letter Ms. Walker indicated that "Everybody interviewed for this report, including Mr. Roglieri's ex-wife, Tina Roglieri, expressed support for his release from detention." Def Request #48 Exhibit 1, at pg 5 of 8.  Mrs. Roglieri did not include in her declaration any denial of expressing support for Mr. Roglieri's release.  The most she said in that regard was in ¶10 where she said, "If the social worker took my comments to mean that I had no issues with Kris's request for release, then she misconstrued my sentiments."  Mrs. Roglieri can have issue with Mr. Roglieri's request for release and still support his release. ██████████████████████████

---

[1] Ironically the government relies on information that was both known and/or available to them at the time of the original hearing on June 3, 2024 to argue that the court should ignore any information that they allege was known or available to the defense at the same time.

██████████████████████████████████████ At no point in the declaration does she indicate any fear of physical violence from Mr. Roglieri.  The Release and treatment plan also said "Tina Roglieri, agreed to be interviewed for this memo. [She did not] report aggression or violence." Def Request #48, Exhibit 1 at pg. 6 of 8.  There is no attempt to refute this fact in her sworn declaration.  Certainly, whoever assisted the preparation of her declaration would have asked about that at the time her declaration was prepared.

Regarding the Risk Evaluation Report, the government attempts to nit pick the report produced by two PsyD, one of which is licensed psychologist in two states. ████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████. The government also alleges accusations of criminal behavior as conclusive of Mr. Roglieri's ability to follow rules. See Govt #51 at pg. 3.  Probable cause is literally the lowest legal burden possible in law and mere accusation is insufficient by itself to establish a failure to follow rules.  The government next gets well out of their lane attempting to interpret the psychological findings of the defense experts.  See Govt #51 at pg. 3.  The government claims that "the defendant is compulsive to the point of having a personality disorder." Ostensibly attempting to interpret the Millon Clinical Multiaxial Inventory - IV (MCMI-IV) in the Risk Evaluation Report at pg. 6-7, which explicitly states that, "A mental health clinician trained in the use of psychological tests should interpret the report."

Drs. Colistra & Dodge can be made available to provide testimony should the Court require clarification of any portions of the Risk Evaluation Report.

However, the conclusions of the report speak for themselves. "Overall, these results do not suggest an antisocial orientation or personality style. They also seem to converge with the desirability testing administered to him. This is good prognosis for his amenability to be released into the community while awaiting a final disposition in his case." *Id.* at pg. 9. "Given the personality testing data available, and the interview with Mr. Roglieri, he does not have a criminal history, and no antisocial traits were identified. He does not meet criteria for having antisocial personality disorder. Further, he does not have any traits generally associated criminality such as callousness, manipulation, and unwillingness to follow the rules. His testing, overall lifestyle stability, and numerous character letters, indicates a strong capacity for empathy and remorse." *Id.* at pg. 10.

> Given the totality known information at this time, it is the overall opinion of this evaluator that Mr. Roglieri's risk of violence is minimal. As noted above, Mr. Roglieri's alleged behavior does not appear to be related to antisociality which has been repeatedly demonstrated through the research to be the strongest predictor of reoffending. Additionally, he has no history of violent behavior toward others, which research has shown to be predictive of future violence. His past behavior has never indicated violent tendencies, nor has there been any report of violent behavior in the past by individuals close to Mi. Roglieri. Further, Mr. Roglieri currently does not have any known access to weapons, and he has previously surrendered all firearms to law enforcement. Mr. Roglieri's alleged threats of violence seem to have been made during a time of significant psychological distress, and they do not appear to be part of a larger pattern of violence against others throughout his life. Further, there is no data that suggests he has difficulty following rules and/or conditions mandated to him. Thus, the totality of the data suggests to us that Mr. Roglieri could be safely managed if returned to the community at this time.
>
> *Id.*



The government complains that the providers of the mental health treatment suggested by Ms. Walker were not specifically identified in the Release and treatment plan. The names of those providers can be provided upon request. Finally, the government concludes its response with the it's most baseless conclusion in their response, to wit, "In sum, the defense's reliance on the reports for its claim that that 'it is not possible for any able-bodied man to have a lower risk of violence than Mr. Roglieri,' Dkt. # 48 at 2 & n.1, is misplaced." This gratuitous assertion should be gratuitously ignored.

For all of the above reasons, Mr. Roglieri has provided new information that was not known or available at the time of the original detention hearing that has material bearing on the issue whether there are conditions of release that will reasonably assure the safety of any person and the community. In this case, based on all the available information now before the Court, there is no reliable evidence that Mr. Roglieri is in any way inclined let alone determined to follow through on any of the alleged threats and therefore there are conditions of release that could be imposed for his pretrial release.

---

█████████████████████████████████████████████████████████████.

Mr. Roglieri has asked to have attached to this reply as Exhibit a personal statement which he acknowledges was known at the time of his original hearing but wishes it to be made part of the record for the consideration of the Court.

Thank you for your consideration in this matter.

        Sincerely,

        Matthew E. Trainor
        Assistant Federal Public Defender, Albany Office
        Bar Roll # 105643
        matthew_trainor@fd.org

cc:    AUSA Joshua Rosenthal – via ECF
       AUSA Michael Barnett – via ECF

**Certificate of Service**

I, Matthew E. Trainor, attorney of record for the above-named defendant, hereby certify that on November 6, 2024, I electronically filed the foregoing Sentencing Memorandum, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Joshua Rosenthal & Michael Barnett, Assistant U.S. Attorneys.

by: *[signature]*

Matthew E. Trainor, Esq.
Assistant Federal Public Defender
Bar Roll No. 105643
54 State St, STE 310
Albany, New York 12207
Tel: (518) 436-1850
Fax: (518) 436-1780
matthew_trainor@fd.org