# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -against- | MEMORANDUM OF LAW IN SUPPORT OF MR. ROGLIERI'S APPEAL |
| KRIS ROGLIERI, | OF THE DETENTION ORDER |
| Defendant. | Indictment No. 24-CR-392 (MAD) |

### Preliminary Statement

A magistrate judge's pretrial detention order is not final until it is reviewed by the appropriate district court. *United States v. Harrison*, 396 F.3d 1280, 1281 (2d Cir. 2005). When a party moves for revocation of a pretrial detention order, the district court reviews the factual findings of the magistrate judge for clear error. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). The ultimate legal determination is reviewed de novo by the district court. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). A district court reviewing a magistrate judge's bail determination "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *Leon*, 766 F.2d at 80.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Pretrial detention is governed by 18 U.S.C. § 3142, the Bail Reform Act. Here, the magistrate judge misapplied the Bail Reform Act by conducting a detention hearing despite the government's failure to meet its burden of establishing that it was entitled to such a hearing. Because the government failed to meet its burden, the detention hearing that ensued was not authorized by the Bail Reform Act.

"There is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. it is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial." S. REP. 98-225, 6-7, 1984 U.S.C.C.A.N. 3182, 3189.

### A. The Bail Reform Act Allows the Court to Conduct a Detention Hearing Only if Evidence is Presented at the Initial Appearance that One of the Factors Listed in 18 U.S.C. § 3142(f) Exists—Otherwise the Defendant Must Be Released.

The Bail Reform Act allows the Court to conduct a detention hearing only if evidence is presented at the initial appearance that one of the seven factors listed in 18 U.S.C. § 3142(f) exists. This requires the government to (1) cite one of the seven (f) factors as a reason for requesting a detention hearing; and (2) present evidence establishing that the cited factor exists.

#### 1. One of the seven (f) factors must be present for the Court to conduct a detention hearing—otherwise the defendant must be released at the conclusion of the initial appearance.

According to the plain language of the Bail Reform Act, "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in 18 U.S.C. § 3142(f)(1) and (f)(2).  These factors are commonly referred to as the "(f) factors."

18 U.S.C. § 3142(f)(1) contains the first five (f) factors.  It states that the government may request a detention hearing if the defendant is charged with one of the following crimes:

- a crime of violence, sex trafficking of children or by force, fraud, or coercion (18 U.S.C. § 1591), or a federal crime of terrorism (18 U.S.C. § 2332b(g)(5)(B)) for which a maximum term of imprisonment of 10 years or more is prescribed;

- an offense for which the maximum sentence is life imprisonment or death;

- an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or chapter 705 of title 46;

- any felony if such person has been convicted of two or more offenses described in the three bullet points above, or two or more state/local offenses that would have been offenses described in the three bullet points above if a circumstance giving rise to federal jurisdiction had existed, or a combination of such offenses; or

- any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device, or any other dangerous weapon, or involves a failure to register as a sex offender (18 U.S.C. § 2250).

18 U.S.C. § 3142(f)(2) contains the other two (f) factors. It states that the government may request a detention hearing (or the Court may order one on its own motion) if the case involves:

- a serious risk that such person will flee; or

- a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The Supreme Court has affirmed that the plain language of the Bail Reform Act means what it says it means: "Detention hearings [are] available if" and only if one of the seven (f) factors is present. *Salerno*, 481 U.S. at 747. "Absent one of these circumstances, detention is not an option." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999). Every federal court of appeals that has examined this issue agrees that it is illegal to hold a detention hearing unless the government properly invokes one of the (f) factors at the initial appearance. See, e.g., *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 48–49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999). As the Second Circuit has noted, "Section 3142(f)(1) thus performs a gate-keeping function

by limiting the circumstances under which pretrial detention may be sought to the most serious of crimes." *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) (punctuation omitted).

### 2. The government must establish the cited (f) factor by a preponderance of the evidence.

Simply citing an (f) factor is not enough to trigger a detention hearing. The government must do more. For a court to lawfully move forward from an initial appearance to a detention hearing, "the Government must establish by a preponderance of the evidence that it is entitled to a detention hearing." *Watkins*, 940 F.3d at 158. Thus, the government must establish one of the (f) factors by a preponderance of the evidence before a detention hearing can be scheduled. If it does not do so, the defendant must be released at the conclusion of the initial appearance.

### 3. The government is not entitled to a three-day continuance to seek evidence establishing an (f) factor.

The government is not entitled to a three-day continuance to seek evidence establishing an (f) factor. That evidence must be produced at the initial appearance and no later. If and only if the government meets its burden and shows that it is entitled to a detention hearing may a continuance be requested. This is clear from the structure of subsection (f). Subsection (f) first sets forth the seven factors that must be established before a detention hearing can be scheduled. After setting forth those factors, subsection (f) states that the detention hearing "shall be held immediately" unless the defendant or the government seeks a continuance of the detention hearing. The Bail Reform Act does not include any provision authorizing the government extra time to establish an (f) factor. If the government does not present such evidence at the initial appearance, the Court must release the defendant.

**B.     Mr. Roglieri Should Have Been Released at the Conclusion of his Initial Appearance Because the Government Did Not Establish any (f) Factor by a Preponderance of the Evidence.**

Here, the government did not establish an (f) factor by a preponderance of the evidence at Mr. Roglieri's initial appearance. Accordingly, Mr. Roglieri should have been released at the conclusion of that appearance as requested by his counsel. The Magistrate Judge's failure to do so has resulted in Mr. Roglieri being wrongfully detained since May 31, 2024.

At the initial appearance AFPD Michael McGeowan-Walker stated on the record that this case did not include the presumption cases listed in 18 U.S.C. §3142(f)(1). *See* Official Transcript of Initial Appearance held on 5/31/2024, Dkt #24, (hereinafter "Transcript IA") at pages 5-6. He was also very dubious that the government would be able to establish their burden to prove by a preponderance of the evidence that there was "a serious risk that [Mr. Roglieri] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B), and asked that Mr. Roglieri be immediately released on conditions. *See* Transcript IA at pg. 6.

The government moved for a detention hearing on the basis that:

> The government believes it's entitled to a bail or a detention hearing under 3142(f)(2)(B), that the defendant poses a serious risk that he will obstruct or attempt to obstruct justice, threaten, injure, or intimidate or attempt to threaten, injure, intimidate a prospective witness or juror. Your Honor, the government is in possession of threats that, while Mr. McGeown-Walker has accurately stated were not transmitted to the supposed victims of the threats, they are quite concerning. I know the Court is aware of at least some of them through the search warrant application that we made last night. And for those reasons, we believe that we'd be entitled to a detention hearing and that at the detention hearing, we would be able to meet our burden that the defendant is a danger to the community.

Transcript IA at pg. 6.

The government cited the following evidence to establish the (f)(2)(B) (f) factor:

- That the government was in possession of "threats" that were not transmitted to the purported targets and said further claimed that "they are quite concerning."
- That they made a search warrant application May 30, 2024.

That's it. Nothing else. No mention at all of obstruction or intimidation. The government did not provide the defense with a copy of the referenced search warrant application until July 15, 2024 when it disclosed, among other materials, 2,871 PDFs collectively containing 55,634 pages. The PDF file names only included the Bates number on the first page of each file. The government provided an index to the discovery materials on September 25, 2024. In that index the written search warrant application made on May 30, 2024 was identified as "124mj22 CFH 25 App Aff 053022024." Every other search warrant application listed in the index had "SW" as part of the index filename. *See e.g. In re Oliver* 333 U.S. 257, 266 (1948).

"After a motion for detention has been filed, the district court must undertake a two-step inquiry. … It must first determine by a preponderance of the evidence … that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice. Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." *U.S. v. Friedman*, 837 F.2d 48, 49 (1988)(internal citations omitted). "The question whether the defendant poses a danger to the safety of the community under subsection 3142(e) *cannot be considered* unless the defendant is found to be eligible for detention under subsection 3142(f). A defendant who is not eligible *must* be released, notwithstanding dangerousness." *U.S. v. Dillard*, 214 F.3d 88, 96 (2000)(emphasis added).

Because the government didn't even attempt to provide evidence let alone a preponderance, that Mr. Roglieri posed a serious risk of obstructing justice, threatening, injuring or, intimidating any

prospective witnesses at the initial appearance on May 31, 2024, his pretrial detention is illegal and void.

**C.     The government never argued at the detention hearing that Mr. Roglieri would attempt to obstruct justice.**

The Court started the detention hearing by asking the government's position was to which AUSA Rosenthal responded, "We still seek the defendant's detention for the reasons set forth in our letter based on danger to the community."

In fact, the only person who said anything about whether or not Mr. Roglieri might obstruct anything was AFPD Jeremy Sporn when he pointed out that "He hasn't done anything to obstruct the proceedings. He's shown up in Bankruptcy Court. He's participated fully in the hearings, in the back and forth with the lawyers, with bankruptcy judges, trustees, et cetera."

**D.     The Magistrate never made any written finding that there was a serious risk that Mr. Roglieri would attempt to obstruct justice.**

"In a detention order issued under subsection (e) of this section, the judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i).  The Magistrate's written Order of Detention, Dkt#11, incorporates by reference his statements on the record at the close of the detention hearing on June 3, 2024, *see e.g. United States v. Barth*, 899 F.2d 199, 201 (2d Cir. 1990), where the Magistrate announced his findings to support his order of detention. *See* Official Transcript of Detention Hearing, Dkt#21 (hereinafter "Transcript Det Hrg"), at pgs 17- 20.  His findings included the following:

   1. That there were no conditions that could be set that would ensure Mr. Roglieri's safety in the community.

   2. That the government's evidence on the nonviolent Wire Fraud charge appeared to be strong and that the allegations involved a substantial amount of loss. *See* Transcript Det Hrg at 18.

3. The Magistrate then summarized the text messages from Government's Letter-Motion for Pretrial Detention, Exhibit 3 Dkt#6, at Pg 17 – 18. *See* Transcript Det Hrg at 18.

4. That the Magistrate was also disturbed by the allegations by Person-1 regarding oral statements first reported on May 24, 2024.

5. That based on the text messages and oral statements the Magistrate said:

   > There's nothing I can do with respect to setting conditions that would address those. If I put him on electronic monitoring and GPS and he's determined to follow those on those alleged threats, I have no ability to stop him from doing so, and neither would pretrial services.

   Transcript Det Hrg at Pg 19.

6. The Magistrate also noted Mr. Roglieri's "history involving ownership of substantial numbers of firearms." And further mentioned that "Possession of some of these weapons resulted in state charges, which are currently pending against Mr. Roglieri." *Id.*

7. The Magsitrate concluded his findings by saying "Given all of those factors and considerations, I find there are no conditions or set of conditions I could set which would insure Mr. Roglieri's safety in the community. I'm therefore remanding him to detention pending further proceedings in this matter." *Id.* at 19-20.

The Magistrate Judge never made any finding that Mr. Roglieri presented a risk of obstruction of justice. "[T]he Bail Reform Act *does not permit* detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated [in 18 U.S.C. §3142(f)(1)]". *Friedman, supra* at 49(emphasis added).

**E.    The Magistrate's findings following both detention hearings were not supported by clear and convincing evidence**

The evidence presented by the government is not sufficient to establish a serious risk of obstruction by clear and convincing evidence, particularly when measured against the Mr. Roglieri's counterevidence on the record in this case.

"The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. §3142(f)(2).

The evidence presented by the government is neither clear nor convincing that Mr. Roglieri poses a serious risk of obstruction etc. or a danger to the community at large.

    a. **Text Messages**

The Court begins by quoting from Government Exhibit 3 which was a text exchange between Mr. Roglieri and his estranged wife that was instigated when his wife got into an argument via text with his new girlfriend.  Mr. Roglieri had previously suggested his wife commence a divorce proceeding because he had found "the one" and had already introduced his girlfriend to their children.  *See* Medical Records filed as to Kris Roglieri, Dkt#47, Forensic Mental Health Assessment, (hereinafter "Colistra Assessment") at pg. 3.

Next the Court reviewed Govt. Exhibit 4 consisting of only three text messages sent to Person-1, but the statements read like quotes out of Good Fellas and there are no specified targets for the purported aggression.  The Court then conflates the messages in Exhibit 4 with the text messages also sent to Person-1 in Govt Exhibit 5 that were sent more than four days later.  In this set of text messages the people he is complaining about are somewhat identifiable, by their function in the litigation but the threats are vague and there is no explicit expression of violence or intimidation.

    b. **Alleged oral statements to Person-1**

The Court then discussed Person-1's uncorroborated allegations of oral statements.  Prior to May of 2024 Person-1 had been interviewed by the FBI agents involved in the case and therefore independently knew their names and descriptions.  The only evidence that Mr. Roglieri allegedly knows one of the FBI agent's home address is the completely uncorroborated claim by Person-1's

claim that Mr. Roglieri *said* he knew where the FBI agent lived. There was never any mention of any specifics of that address, not the street or even the city or town or even what county or state it might be located in. This is because Person-1 didn't know the residential addresses of any of the FBI agents. Person-1's uncorroborated allegations have no weight whatsoever. The "evidence" of verbal threats conveyed only to Person-1 with no instruction to pass those threats on to the purported targets are neither clear nor convincing that Mr. Roglieri poses any risk to "obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate" any of the FBI agents or any other witness for that matter. Every encounter he had with the investigating agents Mr. Roglieri was cordial and compliant with them.

> Of note, on February 2, 2024, the defendant was compliant when FBI agents searched his home; he was also compliant when FBI agents seized vehicles from his home on March 5, 2024, pursuant to warrants issued by this Court.

Letter from USA as to Kris Roglieri, Dkt#6, at pg. 4.

Mr. Roglieri has interacted with the bankruptcy trustees, attorneys, receiver and judge on many occasions and has never engaged in any violent threatening or intimidating behavior and has been polite and deferential. Mr. Roglieri has complained about many of those individuals to his estranged wife and others, but that alone is insufficient to establish a clear and convincing evidence of a serious risk that he would "obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate" any witnesses either directly or indirectly.

The Magistrate in his most recent ruling on November 25 put a lot of weight on the allegations by Person-1 who *claimed* that Mr. Roglieri made several oral statements, all of which have been consistently and repeatedly denied by the defense:

- We deny that Mr. Roglieri said that, Your Honor. Didn't happen.
  Transcript Det Hrg at pg. 13.

- [O]ur position is that it didn't happen.  He didn't say those things, and without the same degree of corroboration that we see in the text messages, I think the Court should look much more askance at that type of summary evidence from Person-1 without frankly [Person-1] coming in here and my being able to cross-examine … and probe a little bit further.   Our position is simply [Mr. Roglieri] did not say those things.
Transcript Det Hrg at pg. 13-14

- The thing I want to just close with is the government has said the Court should not release the defendant so that he can make that plan come to fruition. … there's no plan. There never was a plan.
Transcript Det Hrg at pg 14

**F.       The Magistrate's findings following the detention hearings are clearly erroneous.**

Mr. Roglieri sent text messages to Person-1 not to any prospective witnesses.  Those text messages were vague at best either in either what or who was being threatened.  Government Exhibit 4 contains some bombastic language but no identifiable targets and the government deliberately conflated those text messages with Govt. Exhibit 5 that specifies some individuals by their function in Mr. Roglieri's bankruptcy and civil litigation to bolster the impression that Mr. Roglieri was making explicit threats directed at specific witnesses.

Mr. Roglieri has no history of violence, obstruction or intimidation whatsoever.  *See e.g.* Letter from Matthew E. Trainor as to Kris Roglieri requesting a new detention hearing, Dkt#17 and exhibits pgs. 7-17.  He has never been accused of a crime of violence let alone been charged with one.  There is no evidence that Mr. Roglieri poses any risk of violence let alone clear and convincing evidence of a *serious* risk of obstructing or attempting to obstruct justice, or threatening, injuring or intimidated or attempting to threaten injury or intimidate a prospective witness or juror.  *See* 18 U.S.C. § 3142(f)(2)(B).

Dr. Colistra testified that she found that Mr.Roglieri is *minimum* risk for violence to others. The alleged behavior does not appear to be related to antisociality, which has been repeatedly demonstrated through the research to be the strongest predictor of reoffending. Another strong indicator that Dr. Colistra mentioned in her testimony, one of the strongest indicators of committing violent acts in the future is a history of either criminal activity or any reports of past reports of violence.  Mr. Roglieri has no history of violent behavior toward others which research has shown to be one of the strongest predictors of future violence. His past behavior has never indicated violent tendencies, nor has there been any report of violent behavior in the past by individuals close to Mr. Roglieri, including from his estranged wife with whom he has a strained relationship at best.

The Magistrate's dismissal of Dr. Colistra's psychological risk assessment finding in favor of uncorroborated allegations is clearly erroneous.

> Given the totality known information at this time, it is the overall opinion of this evaluator that Mr. Roglieri's risk of violence is minimal. As noted above, Mr. Roglieri's alleged behavior does not appear to be related to antisociality which has been repeatedly demonstrated through the research to be the strongest predictor of reoffending. Additionally, he has no history of violent behavior toward others, which research has shown to be predictive of future violence. His past behavior has never indicated violent tendencies, nor has there been any report of violent behavior in the past by individuals close to Mi. Roglieri. Further, Mr. Roglieri currently does not have any known access to weapons, and he has previously surrendered all firearms to law enforcement.

Colistra Assessment at pg. 10.

How can uncorroborated claims of unrecorded statements from an antagonistic witness overcome Mr. Roglieri's 44 years of consistent history of non-violent behavior, and having been professional assessed by two psychiatrists who found that he represents at most a minimal risk of

violent behavior, yet the Magistrate is able to find that Mr. Roglieri poses a serious risk of obstruction and intimidation as well as a danger to the community.

In determining whether there are conditions of release that will reasonably assure the safety of any person in the community, the Court must consider specific factors outlined in 18 U.S.C. §3142(g) which include:

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2. The weight of the evidence against the person;

3. The history and characteristics of the person, including

    a. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The first factor weighs in Mr. Roglieri's favor since the offense he is charged with is an economic offense.

The second factor is neutral at this stage while the government literally has a mountain of purported evidence, Mr. Roglieri has a viable defense available. *See* Attorney Affidavit of Daniel Rubin attached hereto as Exhibit 1.

The third factor also weighs in favor of Mr. Roglieri as he has deep ties to the community with a history philanthropic activity.  He has no criminal history, no history of alcohol or drug abuse, and has never failed to appear in court as required (granted his only court history prior to the instant offense being his involvement in civil litigation).  Having never been convicted of a crime before he has never been on probation or parole or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

The fourth factor also weighs in Mr. Roglieri's favor.  With absolutely no history of violence in over four decades and a professional psychiatric assessment finding him at minimal risk of violence Mr. Roglieri poses no danger to any person or the community should he be release.

## **CONCLUSION**

The detention order must be vacated because the government failed to provide any evidence at the initial appearance to warrant holding a detention hearing at all, *see Watkins, supra*.  Even if the government had met their burden at the initial appearance and provided by a preponderance of the evidence that Mr. Roglieri posed a serious risk of obstruction etc. instead of alluding to evidence presented to the Magistrate *ex parte* without even sharing it with the defense, the record clearly establishes not only that Mr. Roglieri does not pose any risk as the clear and convincing evidence submitted by the defense, including Dr. Colistra's Assessment as well as Dr. Walker's Release and

Treatment Plan attached as Exhibit 1 to Letter from Matthew E. Trainor as to Kris Roglieri, Dkt#48, establishes that he poses no risk of dangerousness to anyone.

DATED: December 27, 2024

                                                Lisa Peebles
                                                Federal Public Defender

By _____
                                                Matthew E. Trainor, Esq.
                                                Assistant Federal Public Defender
                                                Bar # 105643
                                                39 North Pearl Street, 5th Floor
                                                Albany, New York 12207
                                                Tel: (518) 436-1850
                                                Fax: (518) 436-1780
                                                matthew_trainor@fd.org

**Certificate of Service**

I, Matthew E. Trainor, attorney of record for the above-named defendant, hereby certify that on December 27, 2024, I electronically filed the foregoing Sentencing Memorandum, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to            , Assistant U.S. Attorney.

by: *[signature]*
Matthew E. Trainor, Esq.
Assistant Federal Public Defender
Bar Roll No. 105643
54 State St, STE 310
Albany, New York 12207
Tel: (518) 436-1850
Fax: (518) 436-1780
matthew_trainor@fd.org