UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -against- | REPLY TO THE GOVERNMENT'S RESPONSE |
| KRIS ROGLIERI, | Indictment No. 24-CR-392 (MAD) |
| Defendant. | |

I. **Kris Roglieri is charged with economic crimes.**

The Government spends a lot of ink describing how strong the evidence is on Mr. Roglieri's Wire Fraud charges. However, Wire Fraud in violation of 18 U.S.C. § 1343 is not one of the offenses listed under 18 U.S.C. § 3142(f)(1) and therefore the strength of the government's evidence has no bearing on whether Mr. Roglieri is subject to pretrial detention. At any rate the government has misconstrued the business model employed by Prime Capital Ventures, LLC. The Interest Credit Accounts were deposited with Prime Capital Ventures, LLC, which was the lender for the various projects to the clients. As part of the agreement the ICA deposits would be issued as a credit on the accounts on the books of Prime Capital. Prime would then leverage the deposits to gain access to a credit line which they would then loan to the clients to fund their projects. During this process Prime Capital was defrauded by two business entities of tens of millions of dollars. In it's response the government claims that "For several years, [Mr. Roglieri] had conned a host of prospective borrowers…" Govt Response, Dkt#67 at pg. 3, but later states that, "Prime Capital's civil complaint against the entity named in the defendant's motion was filed in February 2023 and relates to conduct in 2022, **before much of the defendant's fraudulent activity occurred**." *Id.* at pg. 22. If, as the government alleges, Mr. Roglieri was engaged in transactions involving ICA

deposits from clients in exchange for a line of credit to fund projects, then Prime Capital being defrauded of tens of millions of dollars would substantially impair his ability to full fund projects of his clients. From approximately October of 2022 and into 2023 Prime Capital was able to close several deals which resulted in fees and interest pursuant to the agreements signed by the clients. This is only the tip of the iceberg. Regardless, the strength of the government's case on the Wire Fraud charges has no bearing on whether Mr. Roglieri is subject to pretrial detention.

### II.     The Magistrate did not make any findings of fact at Mr. Roglieri's initial appearance on May 31, 2024.

No facts were proffered or otherwise introduced at the initial appearance by the government sufficient to establish by a preponderance of the evidence that the government is entitled to a detention hearing. *See United States v. Watkins*, 940 F.3d 152, 158 (2nd Cir 2019).

When the Magistrate asked for "the government's position regarding Mr. Roglieri and the issue of detention or release pending further proceedings in this matter?" OFFICIAL TRANSCRIPT of Proceedings as to Kris Roglieri: FTR-recorded Initial Appearance held on 5/31/2024, (hereinafter IA Transcript) Dkt#24, at pg. 5, the government merely presumed there would be a detention hearing in this case and said, "Your Honor, the government moves for a continuance under Section 3142(f). We respectfully request that the Court hold a detention hearing once a bail report has been prepared, and we respectfully request that the defendant be detained pending that proceeding." *See*, IA Transcript at pg.6.

The government did nothing more than paraphrase the statute: "The government believes it's entitled to a bail or a detention hearing under 3142(f)(2)(B), that the defendant poses a serious risk that he will obstruct or attempt to obstruct justice, threaten, injure, or intimidate or attempt to threaten, injure, intimidate a prospective witness or juror." *See* IA Transcript at pg. 6.

"The judicial officer shall hold a hearing ... upon motion of the attorney for the Government... in a case that involves a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B)

In contrast, Assistant Federal Public Defender Michael McGeown-Walker asked the Court to immediately release Mr. Roglieri on conditions and then proffered some actual facts: "You know, he's been aware of this case since February. He's shown up both when required and voluntarily to every single bankruptcy proceeding he's had. His passport has been confiscated. There are no guns at his residence. He has no criminal history or history of violence, and he's a longstanding member of the community. So we'd ask that he be released while this case remains pending or while the detention hearing was pending." IA Transcript at pg. 6.  Not one of the above facts has been controverted by the government.

Because the government never provided any evidence, let alone a preponderance thereof, to establish that they were entitled to a detention hearing, the entire process is tainted.  The Bail Reform Act means what it says it means: "Detention hearings [are] available if" and only if one of the seven (f) factors is present. *United States v. Salerno,* 481 U.S. 739, 747 (1987).

The government mentioned that it was in possession of threats, but never deigned to put any specifics on the record at the initial appearance.  Instead, they withheld the details from the defense and preferred to allude to an *ex parte* disclosure of evidence to the Magistrate the night before.  Because the government failed to proffer any facts on the record, the Magistrate was not in a position to make any findings of facts or make any rulings thereon.  Nevertheless, the government has claimed multiple times that the Magistrate made findings at the initial appearance.

- "his commonsense finding that the defendant's declarations about attacking investigating agents, attorneys, and judicial officers demonstrate a serious risk that the defendant will obstruct justice or harm a witness." Govt Response, at p 5

- "Judge Hummel had ample grounds to hold a detention hearing under 18 U.S.C. § 3142(f)(2) and made such a finding immediately upon Roglieri's first appearance." Govt Response, at pg.19[1]

### III. The government contends that the notice of appeal was filed over six months late.

The Government contends that "Roglieri's stale claim that Judge Hummel erred in his May 31, 2024 determination that a detention hearing was required by 18 U.S.C. § 3142(f)(2)(B) … should be rejected because it is waived." Govt Response at pg. 18. As legal support for this contention the government cites the unpublished decision from the Northern District of Ohio, *U.S. v. Savage,* 2025 WL 26507. That case is clearly distinguishable from the circumstances here. In *Savage* the defendant's order of detention was issued on October 16, 2024, and Mr. Savage filed a motion to revoke the detention order 69 days later on December 24, 2024. The District Court refused to reopen Mr. Savage's detention hearing. In the instant case there was essentially one detention hearing over two dates, June 3, 2024 and November 25, 2024. The notice of appeal was timely filed on December 6, 2024. The government is unsure if Local Rule 59.1 is applicable in this case because the statute only explicitly requires a Notice of Appeal to review pursuant to 18 U.S.C. §3145(c) whereas in this case Mr. Roglieri is seeking review by the judge having original jurisdiction over the offense under subsection (b) which is not mentioned in local rule 59.1 that only applies in appeals under section (c).

---

[1] Immediately after mistakenly claiming that the Magistrate made a finding that he had ample grounds to the government alludes to the "first appearance requirement" and cites *United States v. Montalvo-Murillo,* 495 U.S. 711, 718 (1990) which describes the requirement under the statute that says, "The [detention] hearing shall be held immediately upon the person's first appearance before the judicial officer" 18 U.S.C. §3142(f).

**IV      The massive volume of discovery materials in this case provides a substantial tactical advantage to the government as long as Mr. Roglieri is incarcerated.**

Mr. Roglieri is the foremost expert on what actually occurred in the business transactions underlying the allegations in the indictment and is therefore the best person to glean the documents that establish his defense from the .  While incarcerated he is constrained in his ability to research through the voluminous materials that are not necessarily organized in the most accessible way.  His access to the discovery materials will be limited as there are many other inmates who also seek to review the discovery materials in their case and computer access is limited.  These circumstances will necessarily prolong the trial preparation period for the defense and thereby exacerbate the negative impact that pretrial incarceration has on defendants awaiting trial.  As of this time there are over 300,000 pages of discovery materials and hundreds of GB of digital evidence to be reviewed.

**V.      The defense has consistently questioned the accuracy of the allegations made by "Person-1"**

At the first day of the detention hearing on June 3, 2024, Assistant Federal Public Defender Jeremy Sporn specifically denied that Mr. Roglieri ever made any statements as alleged by "Person-1" in Letter from USA as to Kris Roglieri, Dkt#6.  *See* OFFICIAL TRANSCRIPT of Proceedings as to Kris Roglieri: Detention Hearing held on 6/3/2024, Dkt#21, at pg. 13 & 16.

As noted by the government, Govt Response, at pg 16-17, "the magistrate or district judge must also ensure the reliability of the evidence, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000)(internal quotation omitted).  The oral statements made by Person-1 that were not made subject to the penalty of perjury, and having been conveyed through several intermediaries there is a high risk of inaccuracy.  Why wouldn't the government insist on continuing to merely proffer the oral statements rather than obtain a declaration under oath like the one they were able to obtain from his estranged wife?

**VI.     Dr Colistra's conclusions outweigh off hand venting about his frustrations from the various litigations he was involved in 2023-2024**

Ever since his first appearance, Mr. Roglieri has consistently said through counsel that he was simply venting in the text exchange with Person-1. Every time he was in the personal presence of any of the people described in the text messages he was cooperative and courteous. Mr. Roglieri has a lifetime without a single act of violence. Dr. Colistra found he was at minimal risk for violence. The "withering" cross examination by the government did nothing to impair her conclusions. As an experienced and professional psychologist who has evaluated many people she testified that she essentially expects most of the people she evaluates to lie to her in the interview process. Dr. Colistra testified that a history of violent behavior is the strongest predictor of future violence. *See* OFFICIAL TRANSCRIPT of Proceedings as to Kris Roglieri: Detention Hearing held on 11/25/2024, Dkt#64, at pg. 26.

## CONCLUSION

The detention order must be revoked and Mr. Roglieri released on his own recognizance, or at most on the least restrictive conditions necessary, because the government failed to provide any evidence at the initial appearance to warrant holding a detention hearing at all, *see Watkins, supra*. Even if the government had met their burden at the initial appearance and provided by a preponderance of the evidence that Mr. Roglieri posed a serious risk of obstruction etc. instead of alluding to evidence presented to the Magistrate *ex parte* without even sharing it with the defense, the record clearly establishes not only that Mr. Roglieri does not pose any risk as the clear and convincing evidence submitted by the defense, including Dr. Colistra's Assessment as well as Dr. Walker's Release and Treatment Plan attached as Exhibit 1 to Letter from Matthew E. Trainor as to Kris Roglieri, Dkt#48, establishes that he poses no risk of dangerousness to anyone.

DATED: January 17, 2025

Lisa Peebles
Federal Public Defender

By _____
Matthew E. Trainor, Esq.
Assistant Federal Public Defender
Bar # 105643
39 North Pearl Street, 5th Floor
Albany, New York 12207
Tel: (518) 436-1850
Fax: (518) 436-1780
matthew_trainor@fd.org

**Certificate of Service**

I, Matthew E. Trainor, attorney of record for the above-named defendant, hereby certify that on January 17, 2025, I electronically filed the foregoing Sentencing Memorandum, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Joshua Rosenthal and Michael Barnett, Assistant U.S. Attorneys.

by: _/s/ Matthew E. Trainor_
Matthew E. Trainor, Esq.
Assistant Federal Public Defender
Bar Roll No. 105643
54 State St, STE 310
Albany, New York 12207
Tel: (518) 436-1850
Fax: (518) 436-1780
matthew_trainor@fd.org