UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    vs.

KRIS ROGLIERI,

                            **Defendant.**

1:24-CR-392
(MAD)

---

APPEARANCES:

OF COUNSEL:

OFFICE OF THE UNITED
STATE ATTORNEY
445 Broadway, Room 218
Albany, New York 12207
Attorneys for the Government

JOSHUA R. ROSENTHAL, AUSA
JEFFREY BROWN, AUSA

OFFICE OF THE FEDERAL
PUBLIC DEFENDER
54 State Street - Suite 310
Albany, New York 12207
Attorneys for Defendant

MATTHEW E. TRAINOR, AFPD
JEREMY B. SPORN, AFPD
PAUL E. SHELTON, AFPD
JAMES P. EGAN, AFPD

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

Defendant Kris Roglieri was sentenced on April 3, 2026, to 97 months' imprisonment following his guilty plea to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. Prior to the sentencing hearing, counsel for the Government and Defendant agreed to restitution amounts for eight of the nine victims identified in the Final Presentence Investigation Report ("PSIR"). *See* Dkt. No. 107; Text Minute Entry 04/03/2026. The Court ordered Defendant to pay the agreed upon restitution amounts. The parties did not agree to an amount Defendant would be required to pay to Victim 9 ("V-9") and the Court

1

directed the parties to address the issue in writing.  *See* Text Minute Entry 04/03/2026.  The parties filed their briefs on April 17, 2026.  *See* Dkt. Nos. 125, 126.

As set forth in greater detail in the PSIR, Defendant founded Prime Capital Ventures, LLC and Prime Commercial Lending, LLC, which were purported commercial lending businesses.  *See* Dkt. No 102 at ¶¶ 41-42.  As part of the conspiracy, Defendant would "issue[] to a prospective borrower client a letter of intent . . . to fund a loan, and ask[] the borrower client to pay a fee to Prime Capital for due diligence that Prime Capital claimed to perform while purportedly assessing the client's project and purportedly securing loan funding for the project."  *Id.* at ¶ 12.  "[I]f a client continued to be interested in obtaining a loan from Prime Capital, Prime Capital signed a line of credit . . . agreement with the client and obtained an upfront interest payment from or for the benefit of the client while promising to start funding the client's loan within a certain amount of time."  *Id.* at ¶ 13.  "But Prime Capital never had a proven and legitimate source of funding for the loans it agreed to make."  *Id.*

V-9 was one of the companies defrauded by Defendant.  V-9 submitted a Victim Impact Statement to the Probation Department ahead of Defendant's sentencing which explained that it entered into an agreement with Defendant to fund an affordable housing project in Nashville, Tennessee.  *See id.* at 44.  V-9 stated that its "hard debt" as a result of Defendant's fraud is $9,800,234 and "[t]here is an additional $15,615,400 in losses tied to the projected performance of the property and fees earned as a result of [its] work."  *Id.* at 46.

The Government argues Defendant should be required to pay V-9 restitution in the amount of $9,800,324 because "V-9 has substantiated its sworn representations concerning the losses that it suffered with an itemized tally.  These losses include engineering and architecture services as well as legal fees for the project.  They include loans that were then used to pay for the [upfront

interest] payment" to Prime Capital.  Dkt. No. 125 at 2; *see also* Dkt. No. 127 (Sealed

Government Exhibit Spreadsheet as to V-9's expenses and losses).

Defendant argues he should be required to pay V-9 a restitution payment of $5,000,000

which "is a fair and just amount taking into account potential interest and conservative returns on

investments from the $4,312,500.00" paid as the upfront interest payment.  Dkt. No. 126 at 2.

Defendant contends V-9 should not be compensated for any of its expenditures incurred prior to

entering into the line of credit agreement with Prime Capital on April 6, 2023.  *See id.*

"Because 'the purpose of restitution is essentially compensatory,' . . . and because the

[Mandatory Victims Restitution Act ("MVRA")] itself limits restitution to 'the full amount of each

victim's loss,' . . . a restitution order must be tied to the victim's actual, provable, loss."  *United*

*States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012) (quoting, *inter alia*, 18 U.S.C. § 3664(f)(1)(A)).

"The 'calculation of these losses need not be mathematically precise.'"  *United States v. Rainford*,

110 F.4th 455, 490 (2d Cir. 2024) (quoting *United States v. Rivernider*, 828 F.3d 91, 115 (2d Cir.

2016)).  "The district court need make only a 'reasonable estimate' of the loss 'based on the

evidence before it.'"  *Id.* (quoting *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007)); *see*

*also United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013) ("[T]he MVRA requires only a

reasonable approximation of losses supported by a sound methodology").

The Second Circuit has affirmed restitution awards which have included amounts for

interest on loans as well as expenditures that occurred before the precise moment of fraud.  *See,*

*e.g.*, *United States v. Desnoyers*, 708 F.3d 378, 389-90 (2d Cir. 2013) ("Although there was no

finding that the pre-abatement sampling . . . were themselves conducted improperly, they were an

integral part of the overall scheme. . . .  The victims here would not have paid for the pre-

abatement sampling had they known that the asbestos removal would be fraudulent . . . .");  *United*

3

*States v. Adams*, 955 F.3d 238, 251-52 (2d Cir. 2020) ("[B]ecause prejudgment interest is part of the government's loss when delinquent taxes are not timely paid, the district court properly included accrued interest in the restitution amount"); *United States v. Boccagna*, 450 F.3d 107, 120-21 (2d Cir. 2006) (rejecting a defendant's argument that the victim should not be awarded "consequential losses as 'interest on the loans, maintenance fees, taxes, and selling expenses'") (citation omitted).

Here, V-9 affirmed under the penalty of perjury in its Victim Impact Statement that it incurred $9,800,324 of "hard debt" as a result of Defendant's fraud.  Dkt. No. 102 at 46.  The spreadsheet provided by V-9 contains the date of each financial transaction, a description of the transaction, the due date of any loans or payments, the amount of the transaction, and the name of the individual or entity who paid the money and who it was paid to.  *See* Dkt. No. 127.  The entries in the spreadsheet span from April 24, 2022, to October 1, 2023.  *See id.*  As both parties state in their post-sentencing letters, the spreadsheet contains itemized entries for bank loans, payments made directly to Prime Capital, architectural fees, construction fees, and legal fees.  *See id.*; *see also* Dkt. Nos. 125, 126.  The spreadsheet also contains calculations for V-9's potential "investment return[s]" on the housing project as well as certain fees it expected to incur "upon closing."  Dkt. No. 127.

The Court finds that the Government has established by a preponderance of the evidence that V-9 suffered "actual, provable, loss," *Zangari*, 677 F.3d at 91, because of Defendant's offense conduct in the amount of $9,800,326.[1]  That total accounts for the itemized losses from April 24, 2022, to September 26, 2023, and a legal fee payment made on October 1, 2023.  *See* Dkt. No.

---

[1] This amount is two dollars greater than that calculated by V-9 but reflects the Court's calculation concerning each dollar amount attributable to Defendant's offense conduct as set forth in V-9's spreadsheet.

127.  The interest V-9 has paid on the loan it took out to fund the initial payment to Prime Capital is compensable.  Likewise, the money spent on legal fees, environmental tests, and property assessments before V-9 entered into a contract with Prime Capital is compensable.  V-9 would not have taken out the loan or undertaken any of those expenses if it knew Defendant's conduct was fraudulent.  However, the Court concludes otherwise as to the potential investment returns and closing fees identified by V-9.  There is insufficient evidence before the Court to conclude that those loss amounts are "actual" and caused by Defendant's conduct.  *See Boccagna*, 450 F.3d at 119 ("Expectation damages strive to place an 'aggrieved party in the same economic position it would have been in had both parties fully performed' their contractual obligations. . . .  Criminal restitution, on the other hand, is not concerned with a victim's disappointed expectations but only with his actual loss") (citation omitted).

Insofar as Defendant notes that "[t]he spreadsheet doesn't establish any specifics regarding what each organization specifically performed for Victim 9," counsel for Defendant "h[as] no doubt that Victim 9 received the value of those expenditures."  Dkt. No. 126 at 1.  No hearing on this issue is necessary as the Court heard the parties' arguments during the sentencing hearing and permitted additional written briefs on the matter.  *See United States v. Kinney*, 684 Fed. Appx. 73, 76 (2d Cir. 2017) (summary order) ("[I]n the context of contested issues regarding the propriety of a restitution award, . . . the sentencing procedures employed to resolve such disputes are within the district court's discretion so long as the defendant is given an adequate opportunity to present his position") (citation and quotation marks omitted).  V-9 signed its Victim Impact Statement under the penalty of perjury and Defendant presents no argument that V-9's expenditures are fictitious.  The submissions and arguments received to date are sufficient for the Court to conclude that the Government has met its burden of proof regarding the restitution owed to V-9.

Accordingly, the Court hereby

**ORDERS** that the Government's letter request (Dkt. No. 125) is **GRANTED to the extent set forth in this Order**; and the Court further

**ORDERS** that the Defendant must pay restitution to V-9 in the amount of $9,800,326 in the manner set forth in the Court's judgment dated April 6, 2026; and the Court further

**ORDERS** that the Clerk of the Court shall enter an amended judgment and restitution list to include the amount of restitution owed to V-9 as set forth herein; and the Court further

**ORDERS** that the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  April 27, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

6